1  MARC M. SELTZER (54534)
   mseltzer@susmangodfrey.com
2  STEVEN G. SKLAVER (237612)
   ssklaver@susmangodfrey.com
3  AMANDA BONN (270891)
   abonn@susmangodfrey.com
4  FRANCES S. LEWIS (291055)
   flewis@susmangodfrey.com
5  SUSMAN GODFREY L.L.P.
   1901 Avenue of the Stars, Suite 950
6  Los Angeles, CA 90067
   Telephone: (310) 789-3100
7  Fax: (310) 789-3150

8  [Additional Counsel on signature line]

9  Attorneys for Defendant Alta-Dena Certified Dairy, LLC

10

11          UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA

13               WESTERN DIVISION

14

15  JUAN PEREZ, on behalf of himself and      Case No.  CV13-7741 FMO (JCx)
    those similarly situated,
16
                                              CLASS ACTION
17               Plaintiffs,
                                              ALTA-DENA CERTIFIED DAIRY,
18          v.                                LLC'S NOTICE OF REMOVAL
                                              OF CIVIL ACTION UNDER 28
19  ALTA-DENA CERTIFIED DAIRY,                U.S.C. §§ 1332(a), 1441(a)
    LLC, a Delaware Limited Liability
20  Company; and DOES 1 through 10,           (DIVERSITY JURISDICTION)
    inclusive,
21                                            [Los Angeles Superior Court Case
                 Defendants.                  No. BC 509036]
22
                                              Complaint Filed: May 15, 2013
23

24

25

26

27

28

2912066v1/013775

1    Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), Defendant Alta-Dena
2    Certified Dairy, LLC ("Alta-Dena") hereby gives notice of the removal of the
3    above-entitled action from the Superior Court of the State of California, County of
4    Los Angeles, Case No. BC 509036, to the United States District Court, Central
5    District of California.

6    For this Notice of Removal, Alta-Dena pleads as follows:

7    1.    There is jurisdiction over this removed action pursuant to 28 U.S.C. §
8    1441(a) because the matter in controversy exceeds $75,000, exclusive of interest
9    and costs, and is between citizens of different states, and therefore this case
10   originally could have been filed in this Court pursuant to 28 U.S.C. § 1332(a).

11   2.    On May 15, 2013, Plaintiff Juan Perez commenced this civil action
12   against Alta-Dena, alleging violations of California's wage and hour laws through
13   December 31, 2010, in the Superior Court of the State of California for the County
14   of Los Angeles, entitled *Juan Perez v. Alta Dena Certified Dairy, LLC*, bearing
15   Case Number BC509036. Alta-Dena was served May 17, 2013.

16   3.    On June 17, 2013, Alta-Dena timely removed this case to federal court
17   arguing for jurisdiction on the basis of diversity and the Class Action Fairness Act
18   of 2005. 28 U.S.C. §§ 1332(a), (d)(2). That case was captioned *Juan Perez v. Alta-
19   Dena Certified Dairy, LLC*, Case No. 13-04335 R (FFMx), and was ultimately
20   assigned to Judge Real.

21   4.    On July 15, 2013, while this case was in federal court, Plaintiff filed
22   his First Amended Complaint ("FAC"), which added several new allegations and
23   drastically expanded the time frame for which Plaintiff sought relief. Plaintiff added
24   to his FAC, for example, that (1) Alta-Dena's alleged "route restriction policy"
25   went back as far as 2005 and consequently rendered all meal and rest breaks taken
26   by drivers "on-duty" while the policy was effective, FAC ¶ 16, and (2) that
27   Plaintiff's causes of actions no longer stop in December 2010 but are instead
28   through "the present," because even though Plaintiff was employed by a different

1  company, Dean Transportation, Inc., ("DTI") starting in January 2011, Plaintiff has

2  newly pleaded a theory of "joint employer" liability. FAC at ¶ 8.

3       5.    Plaintiff moved for remand on July 17, 2013, arguing that as pleaded

4  in his *original complaint* (1) there was no minimal diversity under CAFA, (2) the

5  amount in controversy for CAFA purposes did not exceed $5 million, and (3) the

6  amount in controversy under § 1332(a) did not exceed $75,000. *See* Pl.'s Mot. to

7  Remand at 4-5 (citing Complaint). Defendant opposed Plaintiff's motion also based

8  on the amount placed in controversy by the allegations of the original complaint.

9       6.    The Court heard oral argument on Plaintiff's remand motion on

10  September 16, 2013. Following oral argument, the Court granted Plaintiff's remand

11  motion, ruling that §1332(a) diversity jurisdiction was presently lacking because

12  based on the original complaint "at best Defendant here has established $44,000 in

13  controversy" and that CAFA jurisdiction was lacking because the parties were not

14  minimally diverse under the unique CAFA standards for determining citizenship of

15  an LLC. Lewis Decl. Ex. 4 (Order, Case No. 13-04335, Dkt. 40). The Court did not

16  address any arguments that the FAC independently gave rise to diversity

17  jurisdiction, but instead adjudicated the issue of the existence of subject matter

18  jurisdiction only under the operative complaint in effect at the time of removal (and

19  not the FAC). The Court entered an order remanding the case on September 19,

20  2013.

21       7.    On September 20, 2013, the Court's order remanding the case was

22  certified to the state court, when it appears to have been mailed to the state court.

23  Jurisdiction was therefore returned to the state court on September 20, 2013, or at

24  the earliest September 19, 2013. *See, e.g.*, *Seedman v. U.S. Dist. Court for Cent. D.*

25  *of Cal.*, 837 (9th Cir.1988); *Spanair S.A. v. McDonnell Douglas Corp.*, 90 Cal.

26  Rptr. 3d 864, 869 (Cal. Ct. App. 2009) (noting jurisdiction did not return to state

27  court "until the district court clerk mailed a certified copy of the remand order to

28  the Superior Court clerk."). As of that date, the Plaintiff's FAC reasonably became

1    the operative complaint in the state court. *See Laguna Vill., Inc. v. Laborers'*

2    *Internat. Union of N. Am.*, 35 Cal. 3d 174, 179, 672 P.2d 882, 885 (Cal. 1983)

3    (citing as persuasive authority a Missouri case where "amended complaint filed in

4    federal court properly before state court on remand even absent refiling").

5         8.     In light of the new allegations of the FAC, which significantly expand

6    the time frame for which Plaintiff seeks relief, Defendant conducted a detailed

7    investigation into its time records for Plaintiff to determine the amount-in-

8    controversy based on Plaintiff's allegations. *See* Declaration of Marjorie Ball ("Ball

9    Decl."). Although Defendant was under no obligation to conduct such an inquiry,

10   when a Defendant "discovers, based on its own investigation, that [the] case is

11   removable" on the basis of diversity jurisdiction, then a Notice of Removal may

12   subsequently be filed on the basis of that investigation. *Roth v. CHA Hollywood*

13   *Med. Ctr.*, 720 F.3d 1121, 1123 (9th Cir. 2013).

14        9.     As explained herein, Defendant's investigation into Plaintiff's time

15   records demonstrate that the amount-in-controversy for Plaintiff's newly expanded

16   claims in the FAC far exceeds $75,000. Alta-Dena therefore removes this case on

17   the grounds that the FAC gives rise to federal subject matter jurisdiction based on

18   the diversity jurisdiction statute, 28 U.S.C. 1332(a).

19        10.    This Notice of Removal is timely because the FAC is "indeterminate"

20   with respect to the amount in controversy and the Notice is being filed after the

21   Defendant "discover[ed], based on its own investigation, that [the] case is

22   removable" on the basis of diversity jurisdiction. *Roth*, 720 F.3d at 1123 (citing 28

23   U.S.C. § 1446(b)).  Furthermore, to the extent the FAC is deemed sufficient to

24   place Defendant on notice of a basis of removal under 28 U.S.C. § 1446(b), this

25   Notice of Removal is timely because it is being filed within 30 days from

26   September 20, 2013, the date the FAC became operative in state court. 28 U.S.C. §

27   1446(b)(3).  Successive removal petitions are appropriate when, as here,

28

1    "subsequent pleadings or events reveal a new and different ground for removal."

2    *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991).

3          11.    True and correct copies of all process, pleadings and orders that have

4    been filed in this action are submitted herewith as exhibits to the Lewis Declaration.

5          12.    Written notice of the filing of this Notice of Removal will be served

6    promptly upon Plaintiff.  A true and correct copy of this Notice of Removal is being

7    filed with the Clerk of the Superior Court of California for the County of Los

8    Angeles as soon as practicable.

9    **SUMMARY OF NEW ALLEGATIONS IN FIRST AMENDED COMPLAINT**

10          13.    Plaintiff's FAC significantly expanded the timeframe for which

11   Plaintiff is now seeking relief against Alta-Dena. Like the original complaint, the

12   FAC does not allege a specific dollar amount in total damages sought by the

13   Plaintiff.

14          14.    Plaintiff's original complaint brought six causes of action alleging

15   various meal and rest period violations under California law against Alta-Dena. For

16   example, Plaintiff alleged that "from at least 2004 to December 31, 2010,

17   Defendant failed to comply with California Labor Code §§ 226.7 and 512 because

18   it did not authorize or permit its drivers two rest periods during a work-day and/or a

19   duty-free meal period after five hours of work, if at all. Nor did Defendant

20   authorize or permit its drivers a second-duty free meal period after 10 and/or 12

21   hours of work." Compl. ¶ 21 (Lewis Ex. 1). Plaintiff alleged that after January 1,

22   2011, Alta-Dena "no longer employ[ed] drivers," *id.* at ¶ 14 n.1,  and therefore

23   Plaintiff based his allegations on a theory that the impermissible policies and

24   practices continued up "to December 31, 2010," *id.* at ¶ 14.

25          15.    Plaintiff's FAC adds a new theory of joint liability and expands

26   Plaintiff's claims through the present, rather than cutting them off in December

27   2010. Plaintiff added the following paragraph to his FAC:

28

1    "While Alta-Dena purported to transfer Mr. Perez and other drivers to a sister

2    corporation, Dean Transportation, Inc. ("DTI") in January 2011, Alta-Dena

3    continued as a joint-employer of these drivers following this transaction. . . .

4    Thus, Plaintiff alleges Alta-Dena continued as Mr. Perez's common law

5    joint-employer following the corporate transaction with DTI and, therefore,

6    is liable for any and all unpaid wages or other employment related liabilities

7    for the entire class period to the present."

8    FAC ¶ 8 (Lewis Ex. 5).

9        16.    Plaintiff also amended his First Cause of Action for meal and rest

10   period violations under Labor Code § 226.7 and 512, expanding the relevant time

11   frame from "2004 to December 31, 2010" to instead cover from "2004 *to the*

12   *present*." Because Plaintiff was terminated in January 2013, this has the effect of

13   placing an additional two years' worth of alleged violations in controversy against

14   Alta-Dena.

15       17.    Plaintiff also significantly expanded his allegations with respect to the

16   alleged "route restriction" policy that supposedly rendered every single meal and

17   rest period "on-duty" and thus a violation under California law. Plaintiff initially

18   alleged—in two short sentences—only that a policy existed and was a violation of

19   the California Labor Code. Compl. ¶ 14. Plaintiff did not identify when the policy

20   was instituted or what it allegedly said. Plaintiff's FAC adds this detail, including

21   that the "route restriction" was instituted "[f]rom at least 2005 to the present." FAC

22   ¶ 16.

23   **SUMMARY OF NEW FACTS FROM DEFENDANT'S INVESTIGATION**

24       18.    After the FAC was filed in federal court, Defendant began an

25   investigation into the Plaintiff's specific time records. As part of this investigation,

26   Marjorie Ball, the Senior Human Resources Business Partner for Alta-Dena, with

27   the assistance of her staff, collected and reviewed the various time records available

28   for Plaintiff. This included (1) his Kronos records from his date of hire in May 2006

1   until his date of termination in January 2013 and (2) his Xata records from the date

2   the system was implemented in early 2009 until his termination in 2013. Kronos is

3   an on-site software program used by Alta-Dena to keep track of when an employee

4   indicates that he is on or off duty. Ball Decl. ¶ 9. Xata is an on-board GPS computer

5   system installed in every driver's truck starting in 2009, through which drivers can

6   see upcoming deliveries and self-report their activities. The Defendant disputes that

7   the data in Kronos or Xata can be used on a classwide basis to identify whether (or

8   when) a driver took a meal or rest period, or the reasons why.

9          19.    According to Defendant's investigation, Plaintiff's Kronos records

10   indicate that Plaintiff worked a total of 1,517 shifts from his date of hire in May

11   2006 until his termination in January 2013. Ball Decl. ¶ 10. Ms. Ball's records

12   indicate that Plaintiff was scheduled to work five, eight-hour shifts per week for

13   each of these years. Plaintiff's Kronos records also reflect that each of these shifts

14   was at least five hours or longer. Of these shifts, 98.2% were 8 hours or longer and

15   304 of the 338 weeks he worked were 40 hours or more. *Id.* at ¶ 12.

16          20.    Ms. Ball also reviewed the Plaintiff's Xata records. Id. at ¶ 9, 13. Xata

17   has an option for driver's to input when they are taking a lunch break. Xata has no

18   separate feature for self-reporting rest periods. *Id.* Although Xata is not alone a

19   reliable indicator of whether and when a driver takes a meal period, or his reasons,

20   the Plaintiff has suggested that Xata can be used for this purpose.

21          21.    Ms. Ball's review of Plaintiff's Xata records located 897 shifts with

22   Xata data. *Id.* at ¶ 13. Of these, 79 had no specific entry for a "lunch" period. A

23   total of 733 had a lunch entry that started more than five hours after the start of the

24   shift. One entry was for a second meal period starting after the twelfth hour. A total

25   of 478 Xata entries were for shifts longer than ten hours that had a first lunch entry

26   but no second lunch entry. And a total of 3 lunch entries as reported in Xata were

27   less than 30 minutes in length. *Id.*

28

1

**DIVERSITY JURISDICTION**

2    22.    This action as alleged in the FAC could have been filed in this Court

3    based on diversity jurisdiction, 28 U.S.C. § 1332(a), because (1) the citizenship of

4    the plaintiff is completely diverse from the citizenship of Alta-Dena and (2) the

5    penalties at issue for the newly expanded causes of action based on Defendant's

6    investigation easily exceed $75,000.

7    **A.    The Citizenship of Each Plaintiff Is Completely Diverse from the
8          Citizenship of Alta-Dena.**

9    23.    To show that removal is proper pursuant to 28 U.S.C. § 1332(a), Alta-

10   Dena must establish complete diversity of citizenship. *See, e.g.*, *Snell v. Cleveland,*

11   *Inc.*, 316 F.3d 822, 824 (9th Cir. 2002). The citizenship the Plaintiff (California) is

12   completely diverse from the citizenship of Alta-Dena (Wisconsin and Texas).

13   24.    Plaintiff has alleged that at all relevant times he was "an individual and

14   citizen of California." FAC ¶ 2. Thus, for jurisdictional purposes, Plaintiff is a

15   citizen of California. *Cf. Mantin v. Broadcast Music, Inc.*, 244 F.2d 204, 206 (9th

16   Cir. 1957) (noting that allegations of citizenship satisfy the requirements of

17   diversity jurisdiction).

18   25.    As a limited liability company, Alta-Dena's citizenship is determined

19   by the domicile of its members for purposes of diversity jurisdiction under §

20   1332(a). *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir.

21   2006).

22   26.    Alta-Dena has one member, Dean West II, LLC, which is also a

23   limited liability company. (Ball Decl. ¶ 2). Dean West II, LLC has one member,

24   Dean Dairy Holdings, LLC, also a limited liability company. (*Id.* ¶ 3.) Dean Dairy

25   Holdings, LLC's sole member is Dean Holding Company, a corporation organized

26   under the laws of the State of Wisconsin, with its corporate headquarters located at

27   2711 North Haskell Avenue, Suite 3400, Dallas, Texas 75204. (*Id.* ¶¶ 5-6.)

28

27.     Alta-Dena is therefore a citizen of Wisconsin and Texas for jurisdictional purposes. *Johnson*, 437 F.3d at 899.

28.     Because the (California) citizenship of Plaintiff is diverse from the (Wisconsin and Texas) citizenship of Alta-Dena, the complete diversity of citizenship requirement for diversity jurisdiction is satisfied.  *See, e.g., Snell v. Cleveland, Inc.*, 316 F.3d 822, 824 (9th Cir. 2002).

**B.     The Amount in Controversy Exceeds $75,000.**

29.     The amount-in-controversy requirement is satisfied for purposes of diversity jurisdiction because the Plaintiff's newly expanded claims exceed $75,000. 28 U.S.C. § 1332(a).

30.     When the amount in controversy is indeterminate from the face of the complaint, as here, the proponent of diversity jurisdiction "must provide evidence establishing that it is 'more likely than not' that the amount in controversy" exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "To establish the jurisdictional amount, [a defendant] need not concede liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 394, 400 (9th Cir. 2010); *Coleman v. Estes Exp. Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (holding defendant "is *not* obligated to research, state, and prove the plaintiff's claims for damages" to establish jurisdiction (internal quotation marks omitted)).

31.     A proponent of jurisdiction is under no duty to investigate the specific facts underlying an indeterminate complaint. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005). If, however, a Defendant has not lost the right to remove because the state court record is indeterminate, and the Defendant does initiate its own investigation, such a Defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Roth*, 720 F.3d at 1123.[1]

---

[1]Defendant has not lost the right to remove here under § 1446(b)(1) or (b)(3).

32.     In measuring the amount-in-controversy, the Court must assume that all the allegations of the FAC are true and that a jury will return a verdict for the Plaintiff on all claims made in the FAC. *Coleman*, 730 F. Supp. 2d at 1205; *see also Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Cain v. Hartford Life and Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) (Real, J.) (quoting *Korn v. Polo Ralph Lauren Corp.,* 536 F.Supp.2d 1199, 1205 (E.D.Cal. 2008)). For this reason, potential defenses such as the statute of limitations do not affect the amount-in-controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586 (1938) (holding that "the fact that the complaint discloses the existence of a valid defense to the claim" does not eliminate federal jurisdiction); *see also Geographic Expeditions, Inc. v. Estate of Lhokta ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010). Nor is going back to 2004, as Plaintiff's FAC, does, a "legal impossibility." The California Supreme Court has clarified that the four-year statute of limitations in California's Unfair Competition Law ("UCL"), Bus. & Prof. Code, §§ 17200 *et seq.*, which is the period the Plaintiff seeks to apply, can be tolled under a continuing violation theory. *Aryeh v. Canon Bus. Solutions*, 55 Cal. 4th 1185 (2013). Plaintiff explicitly

---

(… cont'd)
Defendant timely removed under § 1446(b)(1) after Plaintiff filed the original complaint in state court. And, no "other paper" has since been filed in state court "from which it may first be ascertained that the case is one which has become removable" so as to trigger the 30-day window in § 1446(b)(3) because the FAC is indeterminate as to the amount in controversy. *See Roth*, 720 F.3d at 1125 (holding right to remove not lost under § 1446(b)(3) despite filing removal notice more than 30 days after filing of amended complaint in state court because amended complaint indeterminate). To the extent the court finds that the FAC qualifies as such, despite being indeterminate as to the amount in controversy, the FAC did not become part of the state court record until (at the earliest), September 20, 2013, when the federal court remanded the case back to the state court. *See, e.g., Peabody v. Maud Van Cortland Hill Schroll Trust*, 892 F.2d 772, 775 (9th Cir. 1989) ("[M]aterials filed in federal court do not trigger the thirty-day removal period for a state-court action.").

seeks damages for violations going back to 2004; Plaintiff cannot simultaneously ask this Court to ignore these allegations for purposes of calculating the amount-in-controversy.

33.     Plaintiff's FAC seeks relief and penalties under six different causes of action, including:

(1) <u>Meal and rest break premiums</u> for alleged violations of Labor Code § 226.7 and 512 "from 2004 to the present," as well penalties for such violations under §§ 226.3 and 2699, among others, FAC ¶¶ 31-33;

(2) <u>Return of any unpaid wages</u> under Labor Code §§ 510, 511, and others, for the practice of allegedly deducting 30 minutes every shift regardless of whether an off-duty meal break was, as well as 25% of all amounts unlawfully withheld as a penalty under § 225.5, FAC ¶¶ 34-39;

(3) <u>Waiting-time penalties</u> under § 203 for allegedly willfully failing to pay all wages at termination as required by § 204, as well as civil penalties under §§ 210 and 2699 for such violations, FAC ¶¶ 40-46;

(4) <u>"Claw-back" penalties</u> under §225.5 for allegedly willfully "clawing back" wages through the practice of deducting time for meal periods in violation of §§ 221-224, FAC ¶¶ 47-51;

(5) <u>Wage statement penalties</u> under § 226(e) for allegedly willfully failing to provide accurate wage statements under § 226(a), as well as civil penalties under § 226.3 for such violations, FAC ¶¶ 52-56;

(6) <u>Unfair business practices</u> in violation of Cal. Bus. & Prof. Code §§ 17200 et seq., including "restitution of all wages earned and due." FAC ¶¶ 57-64.

34.     Although the Ninth Circuit recently clarified that PAGA penalties cannot be aggregated among putative class members, *see Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122-23 (9th Cir. 2013), each of the claims for which the Plaintiff individually alleges penalties, including under PAGA, are still part of the amount in controversy and are separately counted when ascertaining the amount in

controversy, *Schiller v. David's Bridal, Inc.*, CV10-00616, 2010 WL 2793650 (E.D. Cal., July 14, 2010).

### 1.  Meal and Rest Break Premiums

35.    Plaintiff's FAC newly seeks relief for any alleged meal and rest break violations from "at least 2004 to the present." FAC ¶ 11. Plaintiff has also alleged that the route-restriction policy that made each meal and rest period "on duty," was, for the first time, allegedly implemented "from at least 2005 to the present"." FAC ¶ 16. Plaintiff has newly alleged that he is entitled to damages through the present, rather than just through December 2010, under a new theory of "joint employ[ment]." FAC at ¶ 8.

36.    California Labor Code § 227.6 provides that "[i]f an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 227.6. Industrial Welfare Commission ("IWC") Order No. 9, in turn, provides "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee." IWC Order No. 9 ¶ 11(a), codified at 8 Cal. Code Regs. § 11090.

37.    If Plaintiff is prevails on his theory that every meal and rest break taken was inherently "on duty" due to the alleged route restriction policy requiring drivers to stay near their trucks starting in 2005, FAC ¶ 16, a jury could award Plaintiff damages for *every shift* he worked that was eligible for at least one meal period and at least one rest period. *UPS v. Superior Ct.*, 192 Cal. App. 4th 1043, 1044 (Cal. Ct. App. 2011) (holding §226.7 permits recovery of up to two premiums per day, one for any and all meal violations and one for rest periods).

38. During Defendant's investigation into Plaintiff's time records, Defendant learned that from the date of Plaintiff's hire in May 2006 to the date of his termination, he worked 1,517 shifts. Each of these shifts was over five hours, thereby entitling Plaintiff to at least one meal period and at least one rest period. Calculating his premium pay using his average rate of pay for each year, times two violations per shift, Plaintiff's claim for meal and rest break premiums under his revised route restriction theory is $74,209.86, as reflected below:

| Premium Pay – Route Restriction Theory | | | | |
|---|---|---|---|---|
| Year | Average Base Rate of Pay | Number of Shifts | Meal Premium Pay | Rest Premium Pay |
| 2006 | $21.23 | 158 | $3,354.34 | $3,354.34 |
| 2007 | $23.27 | 205 | $4,770.35 | $4,770.35 |
| 2008 | $23.94 | 220 | $5,266.80 | $5,266.80 |
| 2009 | $24.71 | 231 | $5,708.01 | $5,708.01 |
| 2010 | $25.27 | 234 | $5,913.18 | $5,913.18 |
| 2011 | $25.54 | 225 | $5,746.50 | $5,746.50 |
| 2012 | $26.00 | 237 | $6162.00 | $6162.00 |
| 2013 | $26.25 | 7 | $183.75 | $183.75 |
| Total | | 1,517 | $37,104.93 | $37,104.93 |
| | | | | Total = $74,209.86 |

39. Even if the amount-in-controversy is only calculated from February 2008, to January 2013, the amount-in-controversy under his newly revised route restriction theory would be $56,788.84.[2]

---

[2] The number is slightly lower than simply adding the rows for 2008 to 2013 because the row for 2008 must be adjusted to start February 1, 2008. From

40.     Setting aside Plaintiff's route-restriction theory, Plaintiff also alleges that Alta-Dena had a corporate policy of pressuring drivers into skipping or delaying their meal and rest periods. FAC ¶ 17. Plaintiff's new allegations in the FAC seek damages for this alleged failure to authorize meal and rest periods through the present rather than just through December 31, 2010, which was the cut-off in the original complaint. *See* FAC ¶ 32.

41.     Plaintiff has previously argued against assuming that his corporate-pressure theory rendered every eligible meal and rest period a violation, even though courts have repeatedly held that such an assumption is appropriate for amount-in-controversy purposes when supported by the allegations of the complaint like the ones present here. *See, e.g., Coleman*, 730 F. Supp. 2d at 1149 (holding that defendant met its burden by a preponderance of the evidence with a declaration stating the number of employees and calculating damages based on a 100% assumed violation rule supported by the complaint's allegations); *Schuler v. Morton's of Chicago, Inc.*, No. CV 11-1433-KJM, 2011 WL 280993, at *5 (C.D. Cal. Jan. 25, 2011) (finding diversity jurisdiction satisfied under legal certainty standard based on assumed 100% violation rates for meal and rest break claims); *Stevenson v. Dollar Tree Stores, Inc.*, No. CV 1 1-1433-KJM, 2011 WL 4928753, at *4 (C.D. Cal. Oct. 17, 2011) (approving calculation based on a "more often than not" frequency of missed meal breaks given "plaintiff's allegations that members of the class were 'routinely' denied meal periods or not compensated for missed meal periods, combined with his allegations regarding the defendant's 'policy and practice').

---

(... cont'd)
February 1, 2008, to December 31, 2008, Plaintiff worked a total of 202 shifts and his average based rate of pay during that time was $23.98, for a premium of $4,845.98 for each meal and rest periods that year.

42.    Under a 100% violation rate, a jury could award the Plaintiff the same amount that was in controversy under his route-restriction theory, or $74,209.86.

43.    Setting aside the 100% violation rate, however, Defendant has conducted an investigation into Plaintiff's Kronos and Xata records, which are the very records Plaintiff intends to use to support his theory of relief.[3] *See* FAC ¶ 26 n.3 (relying on Xata).

44.    Of the 1,517 shifts Plaintiff worked from his date of hire in 2006 to the present, Defendant's investigation identified 897 shifts with Xata data from the date of Xata's implementation in 2009 to the date of Plaintiff's termination in 2013. Ball Decl. ¶ 13.

45.    Of Plaintiff's 897 Xata shifts, (a) 79 do not appear to have any entry titled "lunch," (b) 478 appear to have an entry for "lunch" but do not have a second entry for "lunch" even though these shifts were ten hours or more, (3) 3 shifts appear to have a "lunch" entry of less than 30 minutes, and (4) 733 have a "lunch" entry that starts more than 5 hours after the start of the shift. *Id.* Eliminating overlaps, i.e., shifts with two or more of the above types of entries, Defendant's investigation has identified 850 unique shifts from 2009 to the present that the Plaintiff would consider a meal "violation," or 94.8% of each shift allegedly worked. *Id.* Every pay period during the time of Xata's use contained at least one of these hypothetical "violations." Plaintiff has not identified any change in his own personal practices pre-dating Xata, therefore it would be reasonable to apply this same percentage to the pre-Xata years for which Xata data is lacking for amount-in-controversy purposes.

46.    Because Xata is not used to record rest periods, and in light of Plaintiff's identical allegations with respect to the policies that allegedly led to rest

---

[3] Again, Defendant does not concede that the Kronos or Xata records are sufficient to establish whether a meal or rest break violation actually occurred.

period violations, *see, e.g.*, FAC ¶ 17, if Plaintiff is successful in establishing his theory of liability for meal periods, a jury could potentially award equal damages for his rest period claims.

47.    Calculating Plaintiff's premium pay using his average rate of pay for each year, considering 94.8% of shifts with two violations per shift (a meal and a rest period), Plaintiff's claim for meal and rest break premiums under his newly expanded corporate-pressure theory **$70,271.20**, as reflected below:

| Premium Pay – Corporate-Pressure Theory (i.e., 94.8% of Shifts a Violation) | | | | |
|---|---|---|---|---|
| Year | Average Base Rate of Pay | Potential Shifts with "Violations"[4] | Meal Premium Pay | Rest Premium Pay |
| 2006 | $21.23 | 150 | $3,184.50 | $3,184.50 |
| 2007 | $23.27 | 194 | $4,514.38 | $4,514.38 |
| 2008 | $23.94 | 208 | $4,979.52 | $4,979.52 |
| 2009 | $24.71 | 229 | $5,658.59 | $5,658.59 |
| 2010 | $25.27 | 234 | $5,913.18 | $5,913.18 |
| 2011 | $25.54 | 192 | $4,903.68 | $4,903.68 |
| 2012 | $26.00 | 223 | $5,798.00 | $5,798.00 |
| 2013 | $26.25 | 7 | $183.75 | $183.75 |
| *Total* | | | $35,135.60 | $35,135.60 |
| | | | | Total = $70,271.20 |

48.    Even ignoring the rule that affirmative defenses should not be considered and applying the four-year statute of limitations from the UCL (tolled to

---

[4] Because there was no Xata data for 2006 through the first month of 2009, this column uses actual shift data for 2010-2013, and extrapolated data for the remaining years. Because in 2009 there were 231 shifts but only 194 with data, an additional 35 shifts are included (which is 94.8% of the remaining 37 shifts lacking

February 1, 2008 from the filing of the de la Cueva action), the amount-in-controversy for meal and rest period premiums under Plaintiff's corporate-pressure theory is $54,102.38.[5]

49.     Finally, Plaintiff's potential damages for his first cause of action must also include the penalties he seeks under §§ 226.3 and 2699. FAC ¶ 33.

50.     California Labor Code § 226.3 provides a civil penalty of $250 per employee per initial violation and $1,000 per employee per subsequent violation. Penalties under § 226.3 are "in addition to any other penalty provided by law."

51.     Plaintiff's claim does not place a time limit on his claims for § 226.3 penalties, and thus Defendant calculates the potential penalties under § 226.3 for a single year from before the Plaintiff's termination as follows: $250 for the first pay period with a violation, plus $ 1,000 each for the subsequent 25 pay periods during the one-year statutory period = $25,250. Plaintiff did in fact work during 26 pay periods before his termination. Ball Decl. ¶ 14. Plaintiff has previously argued that Plaintiff can only consider 25% of penalties as part of the amount-in-controversy, and although Defendant disputes this proposition, Defendant's numbers adopt this approach. The total in controversy for his 226.3 claim is therefore $6,312.50

52.     Section 2699 of PAGA allows individuals to recover civil penalties for Labor Code violations, such as violations under Labor Code §§ 226.7 and 512. Labor Code § 2699(f) states that "[f]or all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions," amounting to "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

_____

(... cont'd)
data in 2009).
[5] As before, the 2008 row starting from February 1, 2008, would be $4593.98, or 191 potential violations (94.8% of the 202 shifts) times his $23.99, his base rate during that time.

A plaintiff alleging a PAGA claim for missed meal periods in violation of Labor Code § 226.7 may thus collect penalties pursuant to Labor Code § 2699(f). *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1111 (2007) (holding "the Court of Appeal erred in construing section 226.7 as a penalty" because "the 'additional hour of pay' [language] is a premium wage intended to compensate employees, not a penalty").

53.     Plaintiff's claim also does not place a time limit on his claims for § 2699(f) penalties, and thus Defendant calculates the potential penalties under § 2699 for a single year from before the Plaintiff's termination as follows: $100 for the first pay period with a violation, plus $200 each for the subsequent 25 pay periods during the one-year statutory period = $5,100, reduced to 25% to a total of $1275. Mr. Perez did in fact receive 26 wage statements during that time period. Ball Decl. ¶ 14.

54.     The total amount-in-controversy for the Plaintiff's newly pleaded first cause of action is therefore within the following ranges:

|  | Route Restriction Theory | | Corporate Pressure Theory | |
|---|---|---|---|---|
|  | As Alleged (start 2006) | Start Feb. 1, 2008 | As Alleged (start 2006) | Start Feb. 1, 2008 |
| Meal & Rest Period Premiums | $74,209.86 | $56,788.84 | $70,271.20 | $54,102.38 |
| Section 226.3 PAGA Penalties | $6,312.50 | $6,312.50 | $6,312.50 | $6,312.50 |
| Section 2699(a) PAGA Penalties | $1,275 | $1,275 | $1,275 | $,1275 |
| **Total** | **$81,797.36** | **$64,376.34** | **$77,858.70** | **$61,689.88** |

1

### 2.    Unpaid Wages

2       55.    Plaintiff also alleges that because defendant wrongfully deducted 30

3    minutes of time from his shifts even if he took no lunch at all, under Labor Code §§

4    510, 511, and others, he is owed back wages for the time worked, as well as 25% of

5    all amounts unlawfully withheld as a penalty under § 225.5. FAC ¶¶ 34-39. If

6    Plaintiff establishes that he involuntarily skipped lunch on a day of 8 hours or more

7    or during a week of 40 hours or more, he would be entitled to at least overtime pay

8    for that extra half hour. Plaintiff alleges that the practice started in 2005, and as

9    newly alleged in his FAC, continued through his termination in 2013. FAC ¶ 21.

10       56.    Defendant's investigation into Plaintiff's Xata records identified 79 of

11    897 shifts from 2009 to the present with no lunch entry at all in Xata, or 8.8%. Ball

12    Decl. ¶ 13. Given that 98% of his shifts were 8 hours or longer, *id.* at ¶ 12,

13    Defendant has applied overtime to these half hour periods. Plaintiff has not

14    identified any change in his own personal practices pre-dating Xata, therefore it

15    would be reasonable to apply this same percentage to the pre-Xata years for which

16    Xata data is lacking.

17       57.    Calculating back wages at issue in this case based on an 8% skip rate

18    at overtime gives the following amounts at issue that a jury could award Plaintiff:

19

| Unpaid Wages – If 8% Shifts Missing Meal Periods | | | |
|---|---|---|---|
| Year | Average Base Rate of Pay | Number of Shifts with "Missing" Meals | Overtime Wages (Base Rate x 1.5 x .5 hrs x Shifts) |
| 2006 | $21.23 | 14 | $222.92 |
| 2007 | $23.37 | 18 | $314.15 |
| 2008 | $23.98 | 19 | $341.15 |
| 2009 | $24.71 | 10 | $185.43 |

| 2010 | $25.27 | 6 | $113.72 |
| 2011 | $25.54 | 6 | $114.93 |
| 2012 | $26.00 | 60 | $1,170.00 |
| 2013 | $26.25 | 0 | $0 |
| *Total* | | 133 | **$2,462.18** |

58.   This estimate, however, does not consider all of the available evidence. Plaintiff has previously testified under oath that he would repeatedly log "fake breaks." Decl. Juan Perez (Lewis Ex. 3). Therefore, under Plaintiff's theory, some percentage of shifts with a logged meal break must be "fake breaks" for Plaintiff's testimony to be truthful. In light of Plaintiff's allegations that the same company pressure that caused him to delay his lunch would cause him to skip his lunch, FAC ¶ 18, for purposes of calculating the amount in controversy, a jury could conclude that at least half of Plaintiff's "late" lunch entries were the "fake breaks" Plaintiff was referring to.

59.   There were 733 "late" lunch entries in Plaintiff's Xata records, or approximately 81.7%. Calculating the back wages using these numbers, and extrapolating that percentage to the years with no Xata data, leads to the following:

| Year | Average Base Rate of Pay | Number of Shifts with "Late" Lunches | Number of Shifts with no Meal if 50% were "Fake breaks" | Overtime Wages (Rate x 1.5 x .5 hrs x Shifts) |
|------|------|------|------|------|
| 2006 | $21.23 | 129 | 65 | $1,027.00 |
| 2007 | $23.37 | 167 | 84 | $1,457.28 |
| 2008 | $23.98 | 180 | 90 | $1,615.95 |
| 2009 | $24.71 | 215 | 108 | $1,992.24 |
| 2010 | $25.27 | 228 | 114 | $2,160.59 |

| 2011  | $25.54 | 164 | 81  | $1,551.56   |
|-------|--------|-----|-----|-------------|
| 2012  | $26.00 | 150 | 75  | $1,462.50   |
| 2013  | $26.25 | 7   | 3   | $59.06      |
| Total |        |     | 619 | **$11,326.18** |

60.     Therefore, a more complete assessment of Plaintiff's potential damages for his Second Cause of Action for unpaid wages from 2006 to the present would be **$13,788.36**, which is the sum of $11,326.18 and $2,462.18.

61.     As part of his Second Cause of Action for back wages, Plaintiff also seeks penalties under § 225.5. Section 225.5 permits the recovery of a penalty of $100 for the initial violation and $200 for each subsequent or any willful violations, for a total of $5,100, plus 25 percent of the amount unlawfully withheld an additional 25% of the allegedly wrongfully withheld wages, here $3,447.09, for a total penalty of $8,547.09. Defendant will again only consider 25% of this potential penalty, or $2,136.77. This brings the total amount in controversy for Plaintiff's Second Cause of Action up to **$15,925.13.**

### 3.     Waiting-Time Penalties

62.     Plaintiff's Third Cause of Action alleges that he is entitled to waiting-time penalties under § 203 as well as civil penalties under §§ 210 and 2699 for Alta-Dena's allegedly willful failure to pay all wages at termination as required by § 204, FAC ¶¶ 40-46.

63.     Section 203 permits the recovery of one day's wages for each day, up to 30 days, that an employer willfully fails to pay wages at the end of employment. In calculating waiting-time penalties, overtime is considered if regularly scheduled. Here, Plaintiff's amended his complaint to include the allegation that "he usually worked 10-12 hours per day." FAC ¶ 7. Plaintiff's Kronos records suggest that 98% of his shifts were over 8 hours. Ball Decl. ¶ 12. If the waiting-time damages

are calculated using Plaintiff's average shift length of 10.297 hours at his 2013 rate of $26.25, with overtime starting after 8 hours, the 30 days of potential penalties at issue totals **$8,108.89**.

64.　Plaintiff also seeks damages under § 210(a) and § 2699 as part of his Third Cause of Action. Labor Code § 210(a), provides that "[i]n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Section [] 204 . . . shall be subject to a civil penalty" amounting to (1) "one hundred dollars ($100) for each failure to pay each employee," and (2) "[f]or each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." Cal. Labor Code § 210(a)(1)-(a)(2). Considering just the 26 pay periods from before Plaintiff's termination, the § 210(a) penalties would be as follows: $100 for the first pay period with a violation, plus $200 each for the subsequent 25 pay periods during the one-year statutory period = $5,100, plus 25% of the allegedly wrongfully withheld overtime wages, here $3,447.09, for total penalty of $8,547.09. Considering only 25% of this amount brings this penalty to $2,136.77.

65.　When the waiting time penalties are combined with the 210(a) penalties, the total amount in controversy for Plaintiff's Third Cause of Action is $9,956.39.

### 4.　Claw-Back Penalties

66.　In addition to seeking back wages for the allegedly wrongfully deducted time, Plaintiff also alleges that the practice of deducting 30 minutes of time is akin to deducting 30 minutes of wages, and that Alta-Dena therefore willfully violated § 221. FAC ¶ 47-51. Plaintiff's Fourth Cause of Action seeks penalties under § 225.5 under this theory.

67.    Under §225.5, "in addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages" in violation of the Labor Code § 221 shall pay a penalty of $100 for the initial violation and $200 for each subsequent or any willful violations, plus 25 percent of the amount unlawfully withheld.

68.    Considering just the 26 pay periods from before Plaintiff's termination, the § 225.5 penalties for the allegedly unlawful auto-deduct policy would be as follows: $100 for the first pay period with a violation, plus $200 each for the subsequent 25 pay periods during the one-year statutory period = $5,100, plus 25% of the allegedly wrongfully withheld overtime wages, here $3,447.09, for total penalty of $8,547.09. Considering only 25% of this amount brings this penalty to $2,136.77.

69.    Plaintiff's Fourth Cause of Action therefore places into controversy an additional $7,390. Considering only 25% of this amount brings this penalty to $1,847.50

### 5.    Wage-Statement Violations

70.    Plaintiff's Fifth Cause of action alleges that Alta-Dena willfully failed to provide accurate wage statements under § 226(a), and also seeks civil penalties under § 226.3 for such violations. FAC ¶¶ 52-56.

71.    California Labor Code § 226(e) provides that "an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."

72.    Defendant's investigation into Plaintiff's Xata records identified— under Plaintiff's theory of liability—a potential meal violation during every pay

period in the 26 pay periods preceding Plaintiff's termination. Ball Decl. ¶¶ 13-14. Furthermore, Plaintiff did in fact receive wage statements for all 26 pay periods preceding his termination, which he alleges violated § 226(a). Calculating the alleged penalty under § 226(e) using just the 26 pay periods preceding Plaintiff's terminations gives a total amount in controversy as follows: $50 for the first pay period with a violation, plus $100 each for the subsequent 25 pay periods during the one-year statutory period = $2,550.

73.    Plaintiff also seeks penalties under 226.3 for the alleged violations of § 226(a). As explained above, § 226.3 provides a civil penalty of $250 per employee per initial violation and $1,000 per employee per subsequent violation. Penalties under § 226.3 are "in addition to any other penalty provided by law," and as alleged, Plaintiff seeks § 226.3 penalties twice—once for the alleged violations of § 226.7 in his First Cause of Action, and again for the alleged violation of § 226(a) in his Fifth Cause of Action.

74.    Plaintiff's claim does not place a time limit on his claims for § 226.3 penalties. Defendant calculates the potential penalties under § 226.3 for a single year as follows: $250 for the first pay period with a violation, plus $ 1,000 each for the subsequent 25 pay periods during the one-year statutory period = $25,250. Considering just 25% of these penalties brings the total to $6,312.50.

75.    When the § 226(e) penalties are combined with the § 226.3 penalties, the total amount in controversy for Plaintiff's Fifth Cause of Action is **$8,862.50**.

### 6.    Unfair Business Practices Claim

76.    Plaintiff also seeks damages under Cal. Bus. & Prof. Code § 17200 et seq. Although Defendant does not rely on this claim for the present Notice because the amount-in-controversy is more than satisfied by Plaintiff's first five causes of action, Defendant reserves the right to present additional information on the damages placed at issue by this claim on any future motion to remand.

### 7.   <u>Attorney's Fees</u>

77.   Plaintiff seeks an award of attorney's fees for his wage-and-hour claims. Such statutory attorneys' fees are properly included in the amount-in-controversy for jurisdictional purposes. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). In Simmons v. PCR Tech., the Court held that "[w]hile attorneys' fees alone would not necessarily exceed $75,000, when viewed in combination with alleged compensatory, punitive, and emotional distress damages, the jurisdictional minimum is clearly satisfied." 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002).

78.   The benchmark for attorneys' fees in the Ninth Circuit is 25% of the recovery. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney's fees.").

79.   The following table reflects the combined amounts in controversy for each of Plaintiff's first five causes of action:

| Theory of Relief | Amount in Controversy |
|---|---|
| 1st COA – Meal & Rest Premiums | $74,209.86 |
| 1st COA – 226.3 Penalties (at 25%) | $6,312.50 |
| 1st COA – 2699 Penalties (at 25%) | $1,275 |
| 2d COA – Unpaid Wages | $13,788.36 |
| 2d COA – 225.5 Penalties (at 25%) | $2,136.77 |
| 3d COA – Waiting Time Penalties | $8,108.89 |
| 3d COA – 210(a) penalties (at 25%) | $2,136.77 |
| 4th COA – Claw Back Penalties (at 25%) | $2,136.77 |
| 5th COA – Wage Statement – 226(e) | $2,550 |
| 5th COA – Wage Statement – 226.3 (at 25%) | $6,312.50 |

| Subtotal: | $118,967.42 |
| --- | --- |

80.     Even excluding all penalties from the above table and considering just Plaintiff's claim for meal and rest premiums and unpaid wages using the newly expanded timeframe of the FAC, the amount-in-controversy is $85,536.04, well above the $75,000 threshold.

81.     Using the full subtotal, attorney's fees at 25% would place an additional $29,741.86 in controversy, for a total amount-in-controversy as follows:

| Subtotal: | $118,967.42 |
| --- | --- |
| Attorney's Fees @ 25% | $29,741.86 |
| **Total Amount in Controversy** | **$148,709.28** |

82.     Plaintiff's counsel has previously suggested that 25% is too high for a putative representative action. But the subtotal for attorney's fees from above reflects just the potential damages a jury could award Plaintiff if his action was litigated individually, not necessarily as a class action. Furthermore, this number is reasonable in light of evidence of counsel's current rate in similar cases. One of Plaintiffs' counsel, Natasha Chesler, recently claimed in a declaration in another case against Alta-Dena in which she represents a different Plaintiff, Miguel de la Cueva, that her hourly rate is $400. (*See* Lewis Decl., Ex. 6, Dkt. 65-2). Ms. Chesler testified in that matter that a simple discovery motion took 3.5 hours of her time. *Id.* Even assuming only 100 hours are expended on litigating Mr. Perez's entire case from start to finish, that would add an additional $40,000 in damages to the amount-in-controversy, well above Defendant's 25% figure.

### 8.     Total Amount in Controversy

83.     In short, Alta-Dena has easily satisfied its burden of showing it is more likely than not that the amount-in-controversy exceeds $75,000 for jurisdictional purposes. In light of Defendant's investigation into the new allegations of the FAC,

a reasonable amount-in-controversy supported by a preponderance of the evidence is **$148,709.28.**

84.    As a result, the Court must exercise diversity jurisdiction based on the FAC.

<u>**CONCLUSION**</u>

The Court has jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332(a), because the citizenship of the parties are completely diverse from each other and the amount-in-controversy on Plaintiffs' claims exceeds $75,000.

WHEREFORE, Defendant Alta-Dena respectfully requests that the above-titled action be removed from the Superior Court of the State of California for the County of Los Angeles to this District Court.

Dated: October 18, 2013

MARC M. SELTZER
STEVEN G. SKLAVER

AMANDA BONN
FRANCES S. LEWIS
SUSMAN GODFREY L.L.P.

JEREMY J. BRANDON
(admitted pro hac vice)
jbrandon@susmangodfrey.com
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, Texas 75202-3775
Tel: (214) 754-1900
Fax: (214) 754-1933

By: _____
FRANCES S. LEWIS
Attorneys for Defendant Alta-Dena Certified Dairy, LLC

2912066v1/013775

26

# PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 950, Los Angeles, California 90067-6029.

On October 18, 2013, I served the foregoing document(s) described as follows:

**ALTA-DENA CERTIFIED DAIRY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332(a), 1441(a)**

**(DIVERSITY JURISDICTION)**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Timothy B. McCaffrey, Jr.
Natasha Chesler
**THE LAW OFFICES OF TIMOTHY B. MCCAFFREY, JR.**
11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Tel: (310) 882-6407; Fax: (310) 882-6359
Email: tmccaffrey@tbmlaw.net; nchesler@tbmlaw.net

X̲ BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

X̲ BY ELECTRONIC MAIL: I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic.

Executed on October 18, 2013, at Los Angeles, California.

X̲ (Federal)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Helen Danielson
(Type or Print Name)

(Signature)

2912066v1/013775